IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LINDSEY GALERA,[1] | § | |
| | § | No. 278, 2019 |
|     Respondent Below, | § | |
|     Appellant, | § | |
| | § | |
|     v. | § | Court Below–Family Court |
| | § | of the State of Delaware |
| DEPARTMENT OF SERVICES FOR | § | |
| CHILDREN, YOUTH AND THEIR | § | File No.     18-11-06TN |
| FAMILIES (DSCYF), | § | Petition No.   18-34790 |
| | § | |
|     Petitioner Below, | § | |
|     Appellee. | § | |
| | § | |
| IN THE INTEREST OF: | § | |
| JOSH TAILOR | § | |

Submitted:   January 15, 2020
Decided:     March 31, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## ORDER

Upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), her attorney's motion to withdraw, the appellee's response and motion to affirm, and the Child's attorney's response, it appears to the Court that:

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(1) The Family Court terminated the parental rights of the appellant, Lindsey Galera ("the Mother"), in her minor son ("the Child") by order dated May 30, 2019.[2] The Mother appeals.

(2) In January 2018, when the Child was not yet six months old, the Department of Services for Children, Youth and Their Families ("DSCYF") petitioned for an *ex parte* order for custody of the Child because the Mother had left home with the Child and her whereabouts were unknown. At the time, the Mother was a fifteen-year-old in DSCYF custody, herself, and placed with the Child's Maternal Great-Grandmother.[3] The Family Court granted custody of the Child to DSCYF on January 10, 2018. With the filing of DFS's dependency and neglect petition, the mandated hearings ensued.[4]

(3) At the preliminary protective hearing on January 17, 2018, the Mother failed to appear. DSCYF believed that she was staying with the Child's father in New Jersey. Due to the Mother's own dependency and neglect case history, DSCYF worried that her mental health issues were not being addressed. DSCYF reported that members of the Mother's family had hidden the Mother and the Child from DSCYF in the past and, therefore, DSCYF had concerns about placing the Child

---

[2] The Family Court's order also terminated the parental rights of the Child's father, who is not a party to this appeal. We only recite the facts in the record as they relate to the Mother's appeal.

[3] The Child's Maternal Great-Grandmother is the Mother's Maternal Grandmother.

[4] When a child is removed from home by DSCYF and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. R. 212-219.

with the Mother's relatives. The Family Court found that probable cause existed to believe that the Child was dependent and that it was in his best interests to remain in DSCYF's care and custody. The Family Court also found that DSCYF had made reasonable efforts to avoid the Child's out-of-home placement.

(4) On February 6, 2018, the Family Court endeavored to hold an adjudicatory hearing. The Mother appeared and counsel was appointed to represent her. The Child's father also appeared, but counsel was not available to represent him. After DSCYF offered a brief proffer as to the Child's well-being, the court rescheduled the adjudicatory hearing to ensure that the Child's father proceeded with the assistance of counsel. The Mother failed to appear at the rescheduled adjudicatory hearing on March 6, 2018. DSCYF reported that the Mother had run away on February 8, 2018, and her whereabouts remained unknown. The Maternal Great-Grandmother and DSCYF continued to harbor concerns that the Mother was not addressing her mental health issues. DSCYF had initiated the process for obtaining approval for the Child's placement with his Paternal Great-Aunt in New Jersey under the Interstate Compact on the Placement of Children ("ICPC"). The Family Court found that the Child remained dependent in the Mother's care and that reasonable efforts had been made to prevent the unnecessary removal of the Child from the home, to reunify the family, and to finalize the permanency plan.

(5) On April 5, 2018, the court held a dispositional hearing. Once again, the Mother failed to appear. Although DSCYF had been unable to review the Mother's reunification case plan with her because her whereabouts were unknown, the court reviewed her case plan. The Mother's case plan required that she: (i) obtain stable employment and demonstrate that she could financially care for the Child, (ii) obtain stable and appropriate housing for the Child, (iii) complete parenting classes, (iv) enroll in school, (v) attend all of the Child's medical appointments, (vi) complete a mental health evaluation and participate in individual therapy, (vii) complete a substance abuse evaluation, and (viii) resolve her outstanding truancy issues.

(6) On August 9, 2018, the Family Court held a review hearing. The Mother was present and represented by counsel. Since returning home in June, the Mother had engaged in services and had attended visits with the Child. Although the Mother was not employed, she had made efforts to obtain employment and was engaged in mental health services. However, DSCYF reported that the Mother was not following the rules at the Maternal Great-Grandmother's home, the Mother had not attended the Child's medical appointments, and the Mother had missed many days of summer school. The court ordered that the Mother's case plan be amended to include a domestic violence component due to allegations that the Child's father had physically harmed or threatened the Mother on at least two occasions. The court found the Child to be dependent in the Mother's care because the Mother was a

4

minor and the Mother was residing with the Maternal Great-Grandmother, whom DSCYF no longer considered an appropriate placement for the Child. DSCYF specifically worried that the Maternal Great-Grandmother would not be able to prevent the Mother from removing the Child from the home.

(7) The Maternal Great-Grandmother had filed a petition for guardianship of the Child and DSCYF had initiated the ICPC process to investigate whether placement with the Paternal Great-Grandmother in New Jersey would be appropriate. Although DSCYF was seeking to change the goal from reunification to termination of parental rights ("TPR") for the purpose of adoption, the court deferred its decision on the motion until the upcoming permanency hearing. The Family Court consolidated the dependency and neglect proceedings with the Maternal Great-Grandmother's pending petition for guardianship and directed DSCYF to conduct a full home assessment of the Maternal Great-Grandmother's home.

(8) A combined permanency and guardianship hearing was held over two days on November 1, 2018, and January 8, 2019. Although both the Mother and the Child's father consented to the Maternal Great-Grandmother's petition for guardianship, DSCYF did not support the petition due to—among other reasons—conflict in the home, inadequate space in the home, and the fact that the Maternal Great-Grandmother had a history with DSCYF dating back to the mid-1980s. The

Family Court denied the Maternal Great-Grandmother's petition, finding that (i) the guardianship was not in the Child's best interests and (ii) guardianship was not an appropriate permanency plan for a one-year-old.

(9) The Mother disappeared after the first day of the permanency/guardianship hearing and failed to reappear until the second day of the hearing. The testimony reflected that the Mother's numerous disappearances negatively affected her ability to address the elements of her case plan and to visit with the Child. In fact, the Mother had not visited with the Child since October of 2018. Although the Family Court recognized that the Mother was a minor, it noted that she had failed to complete even the most basic elements of her case plan—for example, the Mother was still not attending school. The Family Court granted DSCYF's motion to change the permanency goal to TPR/adoption.

(10) A TPR hearing was held over the course of two days in April 2019. The Family Court heard testimony from the Mother, the Child's father, the Child's foster care and adoption case worker, the Division of Family Services' family crisis therapist supervisor, the New Behavioral Network family interventionist, the Child's treatment worker, the Child's Parental Great-Aunt, and the Child's Parental Great-Grandmother. The Mother had completed the substance abuse portion of her case plan and it was possible that she had resolved her outstanding truancy issues. However, the testimony also fairly reflected that: (i) the Mother had not visited with

6

the Child since October 2018; (ii) the Mother could not assume custody and financial support of the Child due to inappropriate housing and lack of income or financial support; (iii) the Mother had failed to attend the Child's medical appointments; (iv) the Mother had failed to successfully complete the parenting classes; (v) the Mother was not engaged in mental health services; (vi) the Mother was not in compliance with the domestic violence element of her case plan; and (vii) neither the Parental Great-Aunt nor the Parental Great-Grandmother had filed a petition for guardianship.

(11) Following the hearing, the Family Court issued a written decision dated May 30, 2019. The Family Court found by clear and convincing evidence that the Mother had failed to plan adequately for the Child's physical and emotional needs.[5] The Family Court also found by clear and convincing evidence that the Child had entered DSCYF's care and had been in care for more than six months[6] and the Mother was not able or willing to assume promptly legal and physical custody of the Child and to pay for the Child's support.[7] The Family Court next found by clear and convincing evidence that DSCYF had made reasonable efforts to reunify the family and to identify relatives willing and able to care for the Child. Finally, the Family Court considered the best interests factors under 13 *Del. C.* § 722 and found, by clear

---

[5] 13 *Del. C.* § 1103(a)(5).
[6] 13 *Del. C.* § 1103(a)(5)a.1.
[7] 13 *Del. C.* § 1103(a)(5)a.4.

and convincing evidence, that termination of parental rights was in the Child's best interests.

(12) On appeal, the Mother's counsel filed an opening brief and a motion to withdraw under Supreme Court Rule 26.1(c). The Mother's counsel asserts that he has reviewed the record and has determined that no arguable claim for appeal exists. The Mother's counsel hand-delivered to the Mother a letter informing her of the provisions of Rule 26.1(c) together with a draft of his 26.1(c) brief. The Mother's counsel also provided her with a copy of his motion to withdraw. The Mother provided points for the Court's consideration, which counsel incorporated in his Rule 26.1(c) brief. The Mother asks this Court to consider the following points: (i) the Child is bonded to her, as evidenced by the fact that the Child knows who she is and that he would stop crying when she used to visit him; (ii) she finished nine out of the ten required parenting classes; and (iii) the Maternal Great-Grandmother, the Paternal Great-Grandfather, and the Maternal Great-Aunt are placement resources for the Child. DSCYF and the Child's Attorney have responded to the Rule 26.1(c) brief and have moved to affirm the Family Court's judgment.

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[8] We review legal

---

[8] *Wilson v. Division of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).

rulings *de novo*.[9] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[10] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[11] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[12]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[13] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[14] If the Family Court finds a statutory basis for termination of parental rights, the court must determine whether, under 13 *Del. C.* § 722, severing parental rights is in the best interests of the child.[15] Both of these requirements must be established by clear and convincing evidence.[16]

(15) After careful consideration of the parties' respective positions on appeal and a thorough review of the record, the Court has determined that this appeal should be affirmed on the basis of the Family Court's thorough and well-reasoned

---

[9] *Id.* at. 440.

[10] *Id.*

[11] *Id.*

[12] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[13] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[14] *Id.* at 537. *See also* 13 *Del. C.* § 1103(a) (enumerating the grounds for termination of parental rights).

[15] *Shepherd*, 752 A.2d at 537.

[16] *Powell v. DSCYF*, 963 A.2d 724, 731-32 (Del. 2008).

May 30, 2019 decision. We find no error in the Family Court's application of the law to the facts. The Family Court found clear and convincing evidence that the Mother had failed to plan adequately for the Child's needs, that the Child had been in DSCYF custody in excess of six months, that the Mother was unable to assume prompt legal and physical custody of the Child and to pay for the Child's support, and that termination of the Mother's rights was in the best interests of the Child. Those conclusions are well-supported by the record. To the extent that the Mother argues that the Child's placement with the Maternal Great-Grandmother, the Paternal Great-Grandmother, or the Paternal Great-Aunt would have been preferable, the record reflects that at the time of the TPR hearing: (i) DSCYF opposed the Child's placement with any of the named family members, (ii) the Family Court had already denied the Maternal Great-Grandmother's petition for guardianship,[17] and (iii) neither the Parental Great-Grandmother nor the Parental Great-Aunt had filed a petition for guardianship of the Child.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[17] This Court has no jurisdiction to consider the Mother's objection to the Family Court's denial of the Maternal Great-Grandmother's petition for guardianship. *Hughes v. Division of Family Servs.*, 836 A.2d 498, 506 (Del. 2003).